Good morning, Your Honors. My name is Karen Bucher, and I represent the appellant John Arredondo. How are you? Fine. And with the Court's permission, I would like to reserve two minutes for rebuttal. You've got a clock in front of you. You keep whatever you want. This is the case where the appellant got into a fight with a friend. In that trial, he wanted to call a witness that saw the beginning of the fight to support his theory that he was acting in self-defense. But when it came to trial, he was precluded from calling this witness because this witness decided to invoke his Fifth Amendment rights and not testify just regarding his prior convictions. So the question in this case is whether or not this witness was entitled to refuse to answer every question. And the answer is no. A blanket refusal to answer all questions is not appropriate. You do agree, Ms. Bucher, do you not, that there were at least some questions that could have been asked of the witness that would have implicated his Fifth Amendment rights? No, just on his – Excuse me? No, I disagree. The only questions I can recall were regarding – Well, he was going to be asked about his priors. Correct. Okay. And if I remember correctly, and I looked at this case a few days ago, but if I remember correctly, help me out if I don't. This mattered because he had some sort of three strikes or one of those charges pending on an issue in a case where having priors mattered. So if he is asked about his priors and he admits them, he has essentially short-circuited the prosecution's burden in establishing priors in the other case. Right. And he also had – the other case was an alcohol theft case. So he had two things going on. He had the prior convictions and that current case. Right. But the reason the priors mattered was that the priors aggravated the current prosecution of him in the alcohol theft case, right? That's correct. That could have prejudiced his defense in the theft prosecution, right? You're right. So let me get back to my question. There are at least some questions that he could have been asked if he had testified in this case that would have implicated his – that he could have refused to testify based on his first amendment right. Yes, that's correct, Your Honor. But those questions would have been collateral to the direct testimony. I think that's what the point is. I think the point is – No, I'm not – I'll get there in just a minute. I just want to make sure we're walking down the same road. Okay. Okay. I'd just like to know what – so there are some questions that would have – I mean, that foreseeably would have implicated his first amendment right. Absolutely. Okay. So the trial court says, I don't want to put him on the stand because he will testify and then it will be difficult for the prosecution to impeach, because we know there are at least some things that – as to which could be established on impeachment that he could not testify, that is, he could refuse to testify, as to which he would probably refuse to testify. And I guess my question is, given that balancing, given that the trial court says, look, this would not be fair because he gets on the stand, he says all the stuff that helps the defendant, but then he's not there, you know, to balance off by answering the question that helped the prosecution, I make a judgment that this is unfair, that the fair thing to do is to exclude him. Why isn't that the kind of judgment the trial court is entitled to make? Because the defendant had the right to present his defense, his theory. He – that witness was the only one – the only other witness that saw what happened. And what they could have done instead was he could have gone – the way that I read the cases, the witness could have gone on the stand, testified on direct what he saw in the hallway, and then when it came time, when the prosecutor was asking him questions regarding his prior convictions, at that time, the way I understand the case law, he could evoke his Fifth Amendment right at that time because that information is collateral to his direct testimony. And the unfairness issue, I understand, and what could have happened was the court could have instructed the jury on the adverse consequences or inferences of why he did not – why he refused to answer those questions, the prosecutor could have argued in closing argument his refusal to answer certain questions, or they could have presented documentary evidence that he was convicted of these prior crimes without him having to testify to those crimes, and my client would have had the opportunity to present his defense. He got 45 years' life in prison for this fight. And – Was there anything about – other than the three – I'm sorry, the three – other than the priors, was there anything else in his potential testimony as to which he could have that we know about, the record of threats? Okay. Limited the record, obviously. Is there anything in the record to suggest that there are any other questions that would have been properly objected to by invoking the witness's Fifth Amendment right? Anything other besides the prior conviction? Let's put aside the prior conviction. Is there anything about the fight, about this particular incident? Absolutely not. He was not involved? No. He was walking in the hallway. There's nothing to suggest that he was somehow participated or that he could have gotten drawn into testifying that would have incriminated him? There's nothing in the evidence that would suggest, had he testified anything regarding that incident, that he would incriminate himself. And there's no statement that he made? Not about that incident. He did say something later on that he didn't associate with alcoholics, to a police officer. But that doesn't affect what he saw in the hallway. Apparently this is a hotel in Los Angeles, the way that I understand the record, and he was walking in the hallway and saw the initiation of this fight, and saw that the victim was the one that initiated the fight, to support the defense theory of self-defense. But to answer your question, there's nothing in the record that supports anything that he could say on cross that would incriminate himself. See, he would have to answer everything on direct. He would have to answer anything that he talked about his observations, like were the lights on and off, how far away was he, could he see. Let's talk about recollection. He was obviously represented by counsel, the witness. Yes, he was. And his lawyer came to court and objected to the witnesses appearing? The second time. The first time he said that he can testify, that his client can testify, but I want to stand by and listen to each question and advise him when he should object. And then later on in the proceedings, when it got closer to trial, he told the court that his client wanted to invoke the Fifth Amendment because of his prior convictions and the related theft, alcohol theft charge that was still pending. And that he was refusing to appear? Yes. I mean, obviously not refusing in the sense that he won't come, no matter what the cause was, but he was invoking his Fifth Amendment right as a bar to even taking the stand. Right here to the whole thing. Okay. You've got a minute 35. Okay. Thank you. Any further questions? We'll hear from the State. Good morning, Your Honors. Deputy Attorney General Jason Tran on behalf of Respondents. Appellant has cited no United States Supreme Court precedent compelling reversal in this case. On the contrary, Supreme Court precedent provides that a defendant's right to present a defense is limited. And one such limitation is the Fifth Amendment privilege against self-incrimination. Supreme Court precedent also provides that. What about Washington v. Texas, 1967? Well, that case provides that the defendant's right to present a defense is limited, as cited in the opponent's brief. I thought it held that part of the right to present a defense is presenting the right to compulsory process, to having witnesses appear, be compelled to appear in support of the defense. Isn't that what the case holds? Yes. That is correct. However, we have other United States Supreme Court precedents stating that that right is limited. So when you say there's no Supreme Court precedent, you were really sort of overstating. There is Supreme Court precedent supporting the proposition that the defendant is entitled to compulsory process. Actually, what I was trying to say is that there is no Supreme Court precedent stating that the defendant has an absolute right to present a defense. That right is limited. It's qualified. I'm sorry. What does that mean? You mean he can go on and on and on and on, present repetitive witnesses? He can't present, read the phone book into the record? What are you talking about? Well, we have a case that says he's entitled to compulsory process of witnesses supporting his defense. This is clearly a witness that supported his defense. You agree with that, don't you? That is true. That is true. It goes to the very heart of the case. Well, actually, I disagree with that. Highly relevant? If not to the heart of the case, highly relevant? And higher? Do you think it's – I'm going down a notch. If not to the heart of the case, do you think it was highly relevant to the defense? Not highly relevant. Relevant at all? Relevant but not highly, and this is why. Okay. So it's relevant to the defense. Yes. Okay. Why is that enough? If it's a witness that – why is that enough to be covered by Washington v. Texas? Because these are some subsequent case that cuts back on that, right? Yes. Okay. Which is that? Two subsequent cases cited in the appellee's brief, page 14, Michigan v. Lucas. And that's their – it's quoted as stating that the right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. Okay. What is the legitimate interest? I mean, sure. So you have a right to present witnesses, but, of course, it has to yield to other legitimate interests. Correct. Okay. I'm sorry. You said you had another – we'll talk about this in a minute. What is the other case? Another case is Taylor v. Illinois, which says that the Sixth Amendment does not provide an unfettered right to offer testimony that is, among other things, privileged, which is the situation we have in this case. Well, I'm sorry. The testimony was privileged? Well – When he gets and says, I saw the guy, I walked by and saw the other guy throw the first punch? Not that particular testimony, but the overall testimony that he would present, including testimony given in cross-examination. So as the court of appeals – What testimony given in cross-examination? About his priors, about the pending – The prosecution can't prove his priors without asking him about it. The prosecution couldn't simply present his rap sheet, couldn't bring witnesses in to testify as to the witnesses – The prosecution could have done that, yes, but – So this was not a situation where the prosecution was barred from impeaching him with the priors altogether. No. It was only barred from asking him to admit them. Exactly. But the Supreme Court precedent provides that the cross-examination – So we deny him a witness that goes to what he thinks is the heart of his case, or at least relevant to his defense, because the prosecution prefers – doesn't like the way it would impeach him? It sounds a little bit much. Well, because we have – 45 years to life? 45 years to life, yes. And that was under the three-charge law. And there's a witness who walks by who says the other guy started the fight, and we keep that evidence away from the jury because the prosecution doesn't want to bother to bring in a rap sheet? Because the prosecution has a right to cross-examine a witness, as the court of appeals pointed out, to have the jury examine the demeanor of that witness. That is crucial in the – But it could examine the demeanor in testifying about the facts of the case. It could examine the demeanor when he's cross-examined about the facts of the case. You agree with Ms. Bucher that there was no objection raised to his being cross-examined as to the things he observed as to the incident in question? That is correct, but the prosecution was not – No, but you do agree with that. Yes. So he could be observed – his demeanor could be observed testifying. His demeanor could then be observed being cross-examined as to the basic incident. And the only thing he couldn't be cross-examined about is being asked, is it not true that you are a criminal and a scum because you have these convictions? And the jury couldn't get to see him cringe when the prosecutor asked him those questions. Instead, the prosecution would have had to bring in a rap sheet, which you admit they could easily have done. Yes, they could have done that. So what the jury would have been deprived of, what the prosecution would have been deprived of, is the chance to observe his demeanor as he was forced to admit his prior convictions. That would be more – And for that, you think the State is entitled to cut out a witness that goes to a key defense in this case? All right. First of all, this witness was not a key defense witness for the reasons that this witness did not observe what transpired in that room. All this witness saw was – or allegedly saw – was that the victim punched the defendant. You're trying to recharacterize what the witness purports to testify to, but we don't know, in fact, what he would have been testified to. The proffer, the defense proffer was that he would testify that the other guy started the fight. Now, maybe you could have destroyed him on cross. Maybe you could have shown that he got there late. Maybe you could have shown that he was blind in one eye or he was drunk or under the influence of alcohol or drugs. All those things would have been impossible, which would have undermined the significance of his testimony. But all we have is a proffer. And isn't the proffer that he – what the defense said the witness would testify to is that the other guy started the fight. That's what the defense was setting out to prove. Yes. And we don't have his testimony. We don't know whether he would have testified to that and how well he would have done. All right. Fair enough. But the victim himself – Fair enough. It's true, isn't it? I'm sorry. It's true. That is true. So don't we have to, in judging whether or not this was a denial of due process, don't we have to accept the defense proffer on its face? We have to say, look, we have to assume that that witness would got on a stand and would be just, you know, would testify exactly the way the defense claims they would testify. I was there. I saw the fight from the beginning. I saw everything that preceded it. And the other guy started the fight, and this poor guy was defending himself. And my point is that testimony would have been – would have made no difference because the victim himself admitted that he started the fight. And we have another witness, defense witness, an investigator, collaborating – actually corroborating the defendant's testimony that there was a knife use. So we have the self-defense witness. Homicidal? I'm sorry. We're not talking homicidal. Yes, I am talking homicidal. Okay. It would not have made a difference to have this witness, Hanson, testify based on that evidence. So in light of that – those facts, I submit that there was no reason to compel reverse on this case, as well as the Supreme Court precedent discussed earlier. So unless the Court has any other questions, I will submit. Thank you. Thank you. Ms. Booker, you've got a minute and 35, I believe. Do you want to talk commissaire? Anything else you want to say, too? Just the fact that the witness was the only available eyewitness who saw what happened. And he could have testified how it began, what he observed, and then the jury could have made its determination what happened thereafter. And it would support his defense theory that he acted in self-defense. Did the victim admit he started the fight? I don't recall that. He might have said he pushed him. But I don't recall if that happened first. I don't remember the sequence of events. What I do remember is the defense proffer that the witness would have testified that the victim punched him and pulled him. Somehow they got pulled into the room and they both fell down, and then the door shut. I'm sorry. This was who testified? The proffer of the witness that was about to go. The defense wanted to testify, would have testified that he saw the victim punch the defendant, and somehow they fell into the room and then the door closed. And that's what happened. No one knows what happened thereafter except for what the victim said. And you don't remember what the victim said? Standing here, I don't remember exactly what he said would happen first. And I think he said there was pushing versus punching. Okay. All right. Thank you. Case is argued. We'll stand for a minute.
judges: Kozinski, Fernandez, Rymer